Alisesha VAUGHN, Plaintiff,

v.

### METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

#### Civil Action No. 98–6102.

United States District Court,
E.D. Pennsylvania.

March 14, 2000.

Marc M. Orlow, Bala Cynwyd, PA, for Plaintiff.

E. Thomas Henefer, Reading, PA, for Defendant.

## MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

Now before the Court is the motion of defendant Metropolitan Life Insurance Company for summary judgment (Document No. 13). Upon consideration of the motion, plaintiff's response (Document No. 15), and the memoranda and evidence submitted therewith, pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant's motion will be granted.

## I. BACKGROUND

Plaintiff Alisesha Vaughn ("Vaughn") was an employee of The May Company from 1994 to 1997, and worked as a manager for a May Company subsidiary, Strawbridge & Clothier. In March 1997, Vaughn fell over the base of a fixture at work and twisted her back. She was taken to an emergency room, where she was treated and released with a neck brace. After the accident, Vaughn experienced back pain, muscle spasms, and a limited range of motion in her limbs. She saw a company physician, but therapy and treatment did not alleviate the symptoms, and attempts at resuming a light schedule at work proved too difficult for her. The company physician cleared Vaughn to return to work on June 4, 1997, however, her personal physician, Dr. Alan Rosenzweig, forbade her from working. Vaughn worked her last day for the May Company on June 4, 1997. (Appendix to Defendant's Motion for Summary Judgment ("Appendix"), Exh. 1, Statement of Claim for Ltd. Plan Benefits, Employer Statement, at 275–77).

In August 1997, Vaughn submitted a claim under the May Company's Long–Term Disability Plan ("Plan"). (Appendix, Exh. 1, Long–Term Disability Claim Submission, at 273–87). Attached to that claim was a Physician's Statement of Disability form, completed by Dr. Rosenzweig, which identified four diagnoses: acute cervical strain and myofascitis; acute bilateral trapezius myositis; acute thoracic and lumbosacral strain and myofascitis; and acute exacerbation of fractured odontoid compression fracture at T5, and sacral fracture. (Appendix, Exh.1, Attending Physician's Statement, at 282). Dr. Rosenzweig concluded on the form that Vaughn was totally disabled for her occupation and any other. (*Id.* at 284). The claim was forwarded to defendant Metropolitan Life Insurance Company ("MetLife"), which administers the May Company's Plan. (Appendix, Exh. 1, Letter to MetLife from the May Company, at 273).

The information submitted on Vaughn's behalf included Dr. Rosenzweig's notes, physical therapy records, and letters from Dr. Mark J. Reiner, an orthopedic physician to whom Vaughn had been referred by Dr. Rosenzweig. After examining Vaughn in June 1997, Dr. Reiner noted that she continued to experience back pain and limited mobility, and concluded that Vaughn was unable to work full duty. (Appendix, Exh. 1, Letter from Dr. Reiner, June 19, 1997, at 184). Following an October 1997 office visit, Dr. Reiner observed that while Vaughn sensed some improvement, she still complained of back pain and suffered from restricted mobility. (Appendix, Exh. 1, Letter from Dr. Reiner, Oct. 9, 1997, at 187).

MetLife requested an independent medical examination of Vaughn, which was performed by orthopedic specialist Dr. Francis Mattei. He concluded that Vaughn had fully recovered from her March 1997 injury and reached her pre-injury level of activities, and therefore was capable of returning to full-time work duty. (Appendix, Exh. 1, Independent Medical Examination Report of Dr. Mattei, Sept. 29, 1997, at 198). Dr. Rosenzweig took issue with Dr.

Mattei's conclusions in a November 1997 letter. (Appendix, Exh. 1, Letter from Dr. Rosenzweig, Nov. 19, 1997, at 177).

MetLife then arranged for Vaughn's medical records to be reviewed by an independent physician certified in occupational medicine, Dr. Robert D. Petrie. In a December 1997 report to MetLife, Dr. Petrie concluded that the medical records did not support a finding of total disability. (Appendix, Exh. 1, Independent Medical Review Report, Dec. 10, 1997, at 166). Aside from Vaughn's restricted range of motion, Dr. Petrie observed, there was no evidence of muscle atrophy, muscle weakness, or any other serious impairment. (*Id.* at 167). According to Dr. Petrie, Dr. Rosenzweig's diagnoses were largely based on Vaughn's subjective pain complaints, and were not accompanied by objective findings or medical evidence such as x-rays or other documentation. (*Id.*).

In a February 1998 letter to Vaughn, MetLife summarized its investigation of her claim and concluded that her physician had not provided sufficient objective medical evidence to support a claim that Vaughn was totally disabled from work. (Appendix, Exh. 1, Letter from MetLife Agent Edward Manley, Feb. 2, 1998, at 158). Her claim was therefore denied. (*Id.*)

In March 1998, Vaughn appealed the denial, attaching a letter from Dr. Rosenzweig and a "Key Functional Capacity Assessment," prepared by Vaughn's physical therapist to measure Vaughn's physical limitations. The assessment concluded that she was not capable of returning to work on a full-time basis. (Appendix, Exh. 1, Key Functional Capacity Assessment Report, Mar. 23, 1998). MetLife arranged for the additional information provided by Vaughn to be reviewed by Dr. Petrie, who also spoke with Dr. Rosenzweig. Dr. Petrie's conclusion that Vaughn's medical records did not support a finding of total disability was unchanged. (Appendix, Exh. 1, Appendix, Exh. 1, Independent

Medical Review Report, May 13, 1998, at 117).[1]

In September 1998, MetLife informed Vaughn that her appeal had been denied. (Appendix, Exh. 1, Letter from MetLife Agent Sal Marchese, Sept. 14, 1998, at 8). Citing the lack of objective medical evidence of neuromuscular impairments and Dr. Rosenzweig's failure to provide such evidence despite numerous requests, MetLife concluded on the evidence in its possession that Vaughn was not totally disabled.

Vaughn then brought this suit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), seeking past and future benefits due under the Plan and attorneys fees. This Court has jurisdiction over this case under 28 U.S.C. § 1391(a), as it presents a question arising under federal law.

## II. ANALYSIS

According to Rule 56(c) of the Federal Rules of Civil Procedure, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," then a motion for summary judgment must be granted. The question before the Court at the summary judgment stage is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court's role at summary judgment is not to weigh the evidence, but to determine whether there is a genuine issue for trial; that is, an issue upon which a reasonable jury could return a verdict in the non-moving party's favor. *See id.* at 249, 106 S.Ct. at 2511.

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

In deciding whether there is a disputed issue of material fact, the "inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

### A. The Plan Administrator as Proper Defendant

Defendant MetLife argues that under ERISA, only the Plan may be sued to recover benefits due, and that MetLife, merely the Plan's administrative services provider, is therefore not a proper defendant. There is some confusion among district courts of this circuit and among other circuits on the issue of whether a plan is the only proper defendant in a suit under ERISA to recover benefits.

Defendant cites three cases decided by judges of this district to support its contention that only the Plan may be a defendant in a suit to recover benefits under § 1132(a)(1)(B): *Reinert v. Giorgio Foods, Inc.*, No. 97–2379, 1997 WL 364499 (E.D.

---

1. The Key Functional Capacity Assessment was considered by Dr. Petrie to be "not a true representation of Ms. Vaughn's abilities as performance was due to profound exhibited

weakness which is inconsistent with demonstrated diagnoses." (Appendix, Exh. 1, Independent Medical Review Report, May 13, 1998, at 119).

Pa. June 25, 1997); *Lehigh Valley Hosp. v. Rallis,* No. 94–3082, 1994 WL 327619 (E.D.Pa. July 8, 1994); *Charter Fairmount Inst., Inc. v. Alta Health Strategies,* No. 93–3258, 1993 WL 541675 (E.D.Pa. Dec. 30, 1993). Each case relies upon a decision by the Court of Appeals for the Ninth Circuit, *Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323 (9th Cir. 1985), which held that ERISA permits suits to recover benefits only against the plan and does not allow suits against the plan administrator. *See id.* at 1324.

Standing in direct contrast to *Gelardi* is a case decided by the Court of Appeals for the Third Circuit, *Curcio v. John Hancock Mut. Life Ins. Co.,* 33 F.3d 226 (3d Cir. 1994). There, the court of appeals considered a suit brought against a plan administrator for recovery of benefits under § 1132(a)(1)(B). The court held that a fiduciary of a plan could be liable under ERISA and observed that a party is a plan fiduciary if the party "maintained any authority or control over the management of the plan's assets, management of the plan in general, or maintained any responsibility over the administration of the plan." *Id.* at 233.[2] Upon a review of the plan literature, the court held that the plan

administrator "had sufficient discretionary authority and responsibility in the administration of the plan, so as to satisfy the statutory definition of a fiduciary ... thus making it a proper party under ERISA." *Id.* The *Curcio* court dismissed *Gelardi,* calling it "easily distinguishable" and expressing "surpris[e]" at *Gelardi*'s holding that a plan administrator was not a fiduciary under ERISA and therefore not a proper party. *See Curcio,* 33 F.3d at 234 n. 12.[3]

■ I am bound to follow the interpretation of the Court of Appeals for the Third Circuit,[4] and I read *Curcio* to hold that a fiduciary or plan administrator may be sued for recovery of benefits under § 1132(a)(1)(B). *See Welch v. CoreStates Fin. Corp.,* No. 98–3533, 1999 WL 387276 (E.D.Pa. June 2, 1999) (plan administrator, Corestates, and administrative services provider, MetLife, had sufficient discretionary control within the context of the plan to warrant fiduciary status and thus were proper defendants in a suit for recovery of benefits) (citing *Curcio,* 33 F.3d at 233); *see also Parelli v. Bell Atlantic-Pennsylvania,* No. 98–3392, 1999 WL 1060706 (E.D.Pa. Nov. 22, 1999) (plan ad-

---

2. The full definition of a "fiduciary" under ERISA is as follows: "[A] person is a fiduciary with respect to the plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with responsibility for any moneys or property of such plan, or has any authority and responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Like the court of appeals in *Curcio,* my analysis focuses solely on the third definition, § 1002(21)(A)(iii). *See Curcio,* 33 F.3d at 235 n. 13.

3. Furthermore, the Court of Appeals for the Third Court *sub silentio* allowed a claim for recovery of benefits under § 1132(a)(1)(B) to proceed against a plan administrator. *See Mitchell v. Eastman Kodak Co.,* 113 F.3d 433 (3d Cir.1997).

4. *Curcio*'s holding appears inconsistent with the language of § 1132(d) which states,

   Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter.

   Section 1132(d) was not addressed in *Curcio,* yet the provision was the basis for the holding of the Court of Appeals for the Ninth Circuit in *Gelardi* that the plan is the only proper defendant under ERISA. *See also Spain v. Aetna Life Ins. Co.,* 13 F.3d 310 (9th Cir. 1993); *Gibson v. Prudential Ins. Co. of America,* 915 F.2d 414 (9th Cir.1990). Other courts of appeals are divided over this very question. *See Hall v. Lhaco, Inc.,* 140 F.3d 1190, 1194 (8th Cir.1998) (citing cases).

   Regardless, I am bound to abide by the determination of the court of appeals where its holding is on point, and I believe that it is.

ministrators may be held liable in suit for recovery of benefits); *Carr v. Reliastar Employee Benefits*, No. 98–3393, 1999 WL 961252 (E.D.Pa. Oct. 14, 1999) (plan administrator may be proper defendant in suit for disability benefits due). To the extent that they hold to the contrary, *Reinert*, 1997 WL 364499,[5] *Lehigh Valley*, 1994 WL 327619, and *Charter Fairmount*, 1993 WL 541675, contravene the holding of *Curcio*.

Thus, MetLife's fate as a defendant under ERISA turns on whether it exercised sufficient "discretionary authority or discretionary responsibility in the administration of the plan." *Curcio*, 33 F.3d at 234. For the answer, I look to the Plan's literature. *See id.* The summary plan description provided to employees identifies MetLife as the "Administrative Services Provider" for the plan. (Appendix to Defendant's Motion for Summary Judgment, Exh. 1, Summary Plan Description, at 451). The summary plan description states, "The Administrative Services Provider interprets the Plan and makes all determination as to when benefits are payable for particular claims ..." (*id.* at

456) and that all "decisions by the Administrative Services Provider will be final." (*Id.* at 451.) Furthermore, under the Administrative Services Agreement, in which responsibility for managing the Plan was delegated to MetLife, MetLife has responsibility for evaluating claims, determining eligibility, notifying claimants of approvals and denials of claims, computing benefit amounts, and paying out benefits. (Appendix, Exh. 2B, Administrative Services Agreement, at 3–5). Finally, an affidavit by the Senior Counsel and Secretary of the May Company states that the authority for administering the plan was delegated to MetLife. (Appendix, Exh. 2, Affidavit of Richard A. Brickson, at § 11).

■ This evidence demonstrates that MetLife possesses broad discretion in the interpretation of the plan, sole responsibility for the evaluation of claims, and final decisionmaking authority over the payment of benefits. This strikes me as more than sufficient "discretionary authority and discretionary responsibility in the administration of the plan" to endow MetLife with fiduciary status under ERISA. *See Curcio*, 33 F.3d at 234.[6] Because I have con-

---

**5.** In *Reinert*, the court cited *Curcio* to support the proposition that the plan was the only proper defendant in a suit for benefits under ERISA. *See Reinert*, 1997 WL 364499, at *4. This strikes me as an odd interpretation of *Curcio*, as I read it to hold that entities other than the plan (i.e., fiduciaries) *can* be sued for benefits under ERISA. *See Curcio*, 33 F.3d at 234 ("We conclude that [the administrative services provider] Capital Health maintained sufficient discretionary authority and responsibility in the administration of the plan so as to satisfy the statutory definition of a fiduciary, this making it a proper party under ERISA."). Other courts have concurred with my interpretation of *Curcio*. *See Welch*, 1999 WL 387276, at *4 ("Plaintiff is correct that the proper defendants in an action to recover benefits under § 1132(a)(1)(B) of ERISA are the plan itself and any fiduciaries thereof.") (citing *Curcio*, 33 F.3d at 233); *Hall*, 140 F.3d at 1194 (citing *Curcio* among cases holding that plan is not the only entity that may be sued for benefits under ERISA).

**6.** Furthermore, MetLife is the *de facto* plan administrator, and under *Curcio*, that alone may be enough to establish fiduciary status. *See Curcio*, 33 F.3d at 234 ("It seems obvious

to us that a plan administrator has responsibility in the administration of the plan."). While the Plan identifies the May Company as the "Plan Administrator," (Appendix, Exh. 1, Summary Plan Description, at 456), all of the May Company's responsibilities as plan administrator have been delegated to MetLife. The responsibility and authority for interpreting and construing the Plan rests with an Administrative Subcommittee, which, under the terms of the Plan, lawfully delegated to defendant MetLife the central responsibilities for administering the Plan. (Appendix, Exh. 2B, Administrative Services Agreement, at 3–4). Thus, MetLife is effectively the plan administrator.

In *Parelli*, 1999 WL 1060706, Chief Judge Giles considered whether the official plan administrator was a proper defendant under ERISA. "[T]aking into account the function, and not merely the form, of the 'plan administrator' label," Chief Judge Giles held that the *de jure* plan administrator was not a proper defendant, because the administrative duties and responsibilities had been explicitly delegated to another entity. *Parelli*, 1999 WL 1060706, at *4. Under the logic of *Parelli*, the entity to which those responsibilities were

cluded that MetLife was a fiduciary of the Plan under the terms of ERISA, § 1002(21)(A), I must also conclude that MetLife is "a proper party under ERISA." *Curcio,* 33 F.3d at 235. Therefore, defendant's first argument for summary judgment fails.

### B. The Merits of the Denial of Benefits

MetLife argues that the Court may overturn the denial of Vaughn's benefits only if the Court finds that the denial was "arbitrary and capricious." The record, according to MetLife, demonstrates that the denial was not arbitrary and capricious. Plaintiff contends that the denial of Vaughn's benefits was arbitrary and capricious.

■ The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). Where an administrator has been given discretion, its decisions are reviewed under an "abuse of discretion" or "arbitrary and capricious" standard [7] and they "will not be disturbed if reasonable." *Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 437 (3d Cir.1997) (quoting *Firestone,* 489 U.S. at 111, 109 S.Ct. at 954).

Based on the evidence cited in the above discussion of MetLife's status as a proper defendant under ERISA, I conclude that MetLife, as a fiduciary and *de facto* plan

administrator, was given discretionary authority to determine eligibility for benefits and construe the terms of the plan. *See supra* text, pp. 426–27. Therefore, I will review MetLife's benefits decision under the "arbitrary and capricious" standard. *See Mitchell,* 113 F.3d at 439.

The sole argument advanced by Vaughn in opposition to MetLife's motion for summary judgment is that MetLife's decision to deny benefits should be reviewed under a more exacting arbitrary and capricious standard. Plaintiff's argument is rooted in the Supreme Court's suggestion in *Firestone* that the possibility or actuality of a conflict of interest can be a factor in applying the arbitrary and capricious standard to a benefits decision. *See Firestone,* 489 U.S. at 115, 109 S.Ct. at 957; *see also Lang v. Long–Term Disability Plan of Sponsor Applied Remote Tech.,* 125 F.3d 794 (9th Cir.1997).

■ The Court of Appeals for the Third Circuit has held that no conflict of interest exists when plan assets are restricted solely to plan uses, because under such a regime, the plan, the administrator, and the fiduciaries "incur[ ] no direct expense as a result of the allowance of benefits, nor [do they] benefit directly from the denial or discontinuation of benefits." *Mitchell,* 113 F.3d at 437 n. 5 (quoting *Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 45 n. 5 (3d Cir.1993)). The Plan at issue in this case contains a clause that states, "[N]o part of the corpus or income of the Trust Fund shall be used for, or diverted to, purposes other than for the exclusive benefit of Members under the Plan and for the payment of the expenses of the Plan." (Appendix, Exh. 2A, Long Term Disability Plan of the May Department Stores Company, § 9.1).[8] The Plan thus restricts the

---

delegated would have been a proper defendant, because it possessed all the meaningful administrative authority under the plan. In this case, MetLife is that other entity; all the significant administrative responsibility and discretion rests with MetLife. Thus, "taking into account the function, and not merely the form, of the 'plan administrator label,' " *id.,* I conclude that MetLife is a plan administrator, and therefore a fiduciary and a proper defendant.

7. "The 'arbitrary and capricious' standard is essentially the same as an 'abuse of discretion' standard...." *Mitchell v. Eastman Kodak Co.,* 910 F.Supp. 1044, 1047 (M.D.Pa. 1995), *aff'd,* 113 F.3d 433 (3d Cir.1997).

8. The plan clause in this case is comparable to the clauses in *Mitchell* and *Abnathya.* In *Mitchell,* the plan stated that funds "may not be used for any purpose other than for the exclusive benefit of persons entitled to bene-

use of Plan assets to the Plan itself, and there is no financial incentive for MetLife to deny a claim for benefits. Therefore, there is no possible or actual conflict of interest in this case, and no heightened scrutiny of MetLife's denial of benefits.

■ The question facing this Court is thus merely whether MetLife's denial of benefits was arbitrary and capricious, and was made "without reason, unsupported by the evidence or erroneous as a matter of law." *Mitchell,* 113 F.3d at 439 (quoting, 2 F.3d at 45). On the record now before me, I cannot conclude that it was. MetLife set forth its reasons for the denial of benefits in detailed letters to Vaughn on February 2, 1998, and September 14, 1998. (Appendix, Exh. 1, Letter from MetLife Agent Sal Marchese, Sept. 14, 1998, at 8; Letter from MetLife Agent David Liddy, Feb. 2, 1998, at 158). The reasons for the denial included: (1) an independent medical evaluation performed by orthopedic specialist Dr. Francis Mattei, who concluded that plaintiff was not totally disabled and could return to work (Appendix, Exh. 1, Summary of Independent Medical Evaluation, Sept. 29.1997, at 158); (2) two independent reviews of Vaughn's medical records by occupational medicine specialist Dr. Robert D. Petrie, who concluded that the Vaughn's medical records did not support a finding of total disability (Appendix, Exh. 1, Independent Medical Review Report, Dec. 10, 1997, at 166; Supplemental Medical Review, May 14, 1998, at 117); (3) medical records and physical therapy records submitted by Dr. Rosenzweig and Dr. Reiner that lacked objective medical evidence of total disability. I conclude that this evidence provides a reasonable basis for MetLife's decision to deny long-term disability benefits under the Plan. Defendant's motion for summary judgment will therefore be granted.

fits under the Plan and for reasonable expenses of administering the Plan." 113 F.3d at 437 n. 5. The *Abnathya* provision restricted funds to uses "for the exclusive benefit of

## III. CONCLUSION

If the denial of benefits were being reviewed *de novo,* a different conclusion might have been reached as to Vaughn's eligibility for long-term disability benefits under the plan. There is evidence from which it could have been concluded that Vaughn suffered a serious injury that rendered her unable to work. However, the arbitrary and capricious standard is a highly deferential test that gives Court very little power to overturn a benefits-related decision. The Court of Appeals for the Third Circuit has held that in the ERISA setting, a plan administrator or fiduciary's interpretation "should be upheld even if the court disagrees with it, so long as the interpretation is rationally related to a valid plan purpose and not contrary to the plain language of the plan." *Moats v. United Mine Workers of America Health and Retirement Funds,* 981 F.2d 685, 688 (3d Cir.1992) (quoting *Gaines v. Amalgamated Ins. Fund,* 753 F.2d 288, 289 (3d Cir.1985)). Whether or not I agree with MetLife's decision to deny Vaughn benefits, I cannot conclude on this record that the decision was irrational or contrary to the Plan. Therefore, summary judgment will be granted in favor of defendant on the merits of plaintiff's claim.

An appropriate Order follows.

### *ORDER*

**AND NOW,** this 13th day of March, 2000, upon consideration of the motion of defendant Metropolitan Life Insurance Company for summary judgment (Document No. 13), plaintiff's response (Document No. 15), and the memoranda and evidence submitted therewith, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and having found for the reasons set forth in the foregoing memorandum that there is no genuine issue of material fact and that defendant is entitled to judg-

Members under this Plan or for the payment of expenses of the Plan and the Fund." 2 F.3d at 45 n. 5.

ment as a matter of law, it is hereby **ORDERED** that the defendant's motion for summary judgment is **GRANTED**.

It is **FURTHER ORDERED** that **JUDGMENT IS HEREBY ENTERED** in favor of defendant, Metropolitan Life Insurance Company and against plaintiff Alisesha Vaughn.