Caroline **CARDUCCI** and David Labinski, Plaintiffs,

v.

**AETNA U.S. HEALTHCARE,** Defendant.

Jean Levine, Plaintiff,

v.

United Healthcare Corp., Defendant.

Carole West, Plaintiff,

v.

Health Net of the Northeast, Defendant.

David Collins, Plaintiff,

v.

Oxford Health Plans, Defendant.

Noreen Bogurski, Plaintiff,

v.

Horizon Blue Cross Blue Shield of New Jersey, Defendant.

Benjamin Edmonson, Plaintiff,

v.

Horizon Blue Cross Blue Shield of New Jersey, Defendant.

Dellece L. Barbour, Plaintiff,

v.

CIGNA Healthcare of New Jersey, Inc., Defendant.

William Bibbs, Plaintiff,

v.

AmeriHealth, Inc., Defendant.

Civil Action Nos. 01–4675 (JBS), 01–4964(JBS), 01–5217(JCL), 01–5237(JWB), 01–5339(JBS), 01–5812(JBS), 02–417(JBS), 02–1155(JBS).

United States District Court, D. New Jersey.

March 4, 2003.

Haddonfield, NJ, and Carl D. Poplar, Esquire, Jeffrey Ahren, Esquire, Poplar & Eastlack, Turnersville, NJ, and Roberta D. Liebenberg, Esquire, Fine, Kaplan And Black, R.P.C., Philadelphia, PA, and Marc H. Edelson, Hoffman & Edelson, Doylestown, PA, and Natalie Finkelman Bennett, Esquire, James C. Shah, Esquire, Shepherd, Finkelman, Miller & Shah, LLC, Turnersville, NJ, and Scott R. Shepherd, Esquire, Shepherd, Finkelman, Miller & Shah, LLC, Media, PA, and John W. Trimble, Jr., Esquire, Morrison & Trimble, LLC, Turnersville, NJ, and Mitchell A. Toups, Esquire, Weller, Green, Toups & Terrell, LLP, Beaumont, TX, for Plaintiffs Carducci, Labinski, Levine, West, Collins, Bogurski, Edmonson, and Barbour.

Philip Stephen Fuoco, Esquire, Joseph A. Osefchen, Esquire, Law Firm of Philip Stephen Fuoco, Haddonfield, NJ, for Plaintiff Bibbs.

Burt M. Rublin, Esquire, Raymond A. Quaglia, Esquire, Ballard, Spahr, Andrews & Ingersoll, LLP, Philadelphia, PA, for Defendant Aetna U.S. Healthcare.

Edward S. Wardell, Esquire, Kelley, Wardell & Craig, LLP, Haddonfield, NJ, for Defendant Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross and Blue Shield of New Jersey and for Defendant Aetna U.S. Healthcare.

Edward A. Scallet, Esquire, William F. Hanrahan, Esquire Jason H. Ehrenberg, Esquire, Groom Law Group, Chartered, Washington, DC, and Theodore D. Aden, Esquire, Leboeuf, Lamb, Greene & Macrae, LLP, Newark, NJ, for Defendant United Healthcare Corporation.

B. John Pendleton, Jr., Esquire, McCarter & English, LLP, Newark, NJ, for Defendant Health Net of the Northeast, Inc.

William J. O'Shaughnessy, Esquire, McCarter & English, LLP, Newark, NJ, for Defendant Oxford Health Plans, Inc.

Frank P. Solomon, Esquire, Weitz & Luxenberg, P.C., Cherry Hill, NJ, and Donna Siegel Moffa, Esquire, Lisa Rodriguez, Esquire, Nicole M. Miles, Esquire, Trujillo, Rodriguez & Richards, LLC,

Douglas Arpert, Esquire, Norton, Arpert, Sheehy & Higgins, P.C., West Patterson, NJ, and Brian D. Boyle, Esquire, Martha Dye, Esquire, William J. Stuckwisch, Esquire, O'Melveny & Myers, LLP, Washington, DC, for Defendant CIGNA HealthCare of New Jersey, Inc.

Thomas S. Biemer, Esquire, John J. Higson, Esquire, Dilworth Paxson, LLP, Cherry Hill, NJ, for Defendant AmeriHealth, Inc.

SIMANDLE, District Judge:

## TABLE OF CONTENTS

I. BACKGROUND ................................................604

II. DISCUSSION ................................................605
 A. Motion to Dismiss Standard of Review ................................605
 B. Motion to Dismiss Analysis ................................606
 1. Complete Preemption Dismissal under Section 502(a) ................606
 (a) Failure to allege ERISA cause of action ................................606
 (b) Failure to plead plan as section 502(a)(1)(B) defendant ..............607
 (c) Failure to exhaust administrative remedies ........................609
 2. Conflict Preemption Dismissal under Section 514(a) ................611
 (a) Whether N.J.S.A. 2A:15–97 "relates to" plaintiffs' employee
 benefit plans ................................612
 (b) Whether N.J.S.A. 2A:15–97 is "saved" as a state law that
 regulates insurance ................................614
 (c) Whether N.J.S.A. 2A:15–97 applies in spite of the deemer clause .....617
 C. Additional Arguments for Motion to Dismiss ................................617
 1. Retrospective effect of Perreira v. Rediger, 169 N.J. 399 (2001) ...........617
 2. Voluntary payment doctrine as applied to Levine, Bogurski, and
 Edmonson claims ................................619
 3. Standing doctrine as applied to Collins and West claims ................620
 D. Bibbs v. AmeriHealth, Inc., Civ. No. 02–1155(JBS) Summary Judgment
 Motion ................................622
 1. Compensatory Relief Claims ................................622
 2. Prospective Relief Claims ................................624

III. CONCLUSION ................................................625

■ Under New Jersey law, a health insurer which paid benefits on behalf of an insured may not recoup those funds through a subrogation or reimbursement lien upon the insured's recovery from a third-party tortfeasor, and any such subrogation provision in a New Jersey insurance contract is therefore void. *Perreira v. Rediger,* 169 N.J. 399, 778 A.2d 429 (2001) (interpreting N.J.S.A. 2A:15–97). The principal issues in the present consolidated cases involve whether this prohibition of subrogation arising at state law applies to the health insurance contracts of New Jersey employee benefit plans governed under federal law through the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.,* and thus whether the plaintiff-insureds are entitled to repayment of such subrogated funds, or whether such a claim is preempted by ERISA section 502(a), 29 U.S.C. § 1132(a) (complete preemption) or by ERISA section 514(a), 29 U.S.C. § 1144(a) (conflict preemption).

■ The present motion to dismiss thus requires the Court to consider the doctrines of complete preemption and conflict preemption under ERISA. Congress passed ERISA to "safeguard the establishment, operation, and administration of em-

ployee benefit plans," and included the statute's two preemption provisions to ensure that the federal ERISA statute would set "minimum standards [to] assur[e] the equitable character of such plans and their financial soundness." *Rush Prudential HMO, Inc. v. Moran,* 536 U.S. 355, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002) (quoting 29 U.S.C. § 1001(a)). By preempting many state regulations, ERISA makes clear that the regulation of employee benefit plans is "exclusively a federal concern." *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981).

Complete preemption arises under ERISA section 502(a)'s civil enforcement provision; it completely preempts state law claims within its scope and converts them into federal ERISA claims. Conflict preemption arises under ERISA section 514(a); it expressly preempts any state law which relates to an ERISA plan unless the law "regulates insurance, banking, or securities."

The matter is presently before the Court on seven motions to dismiss by defendants in each of the seven consolidated actions other than *Carducci* itself.[1] [Docket Items 40–1, 42–1, 48–1, 50–1, 50–2, 52–1, and 54–1 in *Carducci, et al. v. Aetna U.S. Healthcare,* No. 01–4675.] The consolidated defendants assert that plaintiffs' complaints should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted because their state law claims are completely preempted and conflict preempted by ERISA.

The Court has considered the submissions of all of the parties and has decided that defendants' motions to dismiss on the basis of complete and conflict preemption must be denied. The Court will then consider, and deny, three additional arguments presented for dismissal, namely whether the 2001 *Perreira* case on which the claims are based should apply retrospectively, whether certain claims should be barred by the voluntary payment doctrine, and whether certain plaintiffs have standing to bring suit. Then, the Court will consider, and will grant, the motion for summary judgment brought in *Bibbs.*

## I. BACKGROUND

On January 28, 2002, this Court granted the motion of defendants in six cases to consolidate their actions for the limited purpose of considering motions for remand and motions to dismiss. As a result, the cases of *Levine v. United Healthcare Corp.,* Civ. No. 01–4964(JBS); *West v. Health Net of the Northeast,* Civ. No. 01–5217(JCL); *Collins v. Oxford Health Plans,* Civ. No. 01–5237(JWB); *Borgurski v. Horizon Blue Cross Blue Shield of New Jersey,* Civ. No. 01–5339(JBS); and *Edmonson v. Horizon Blue Cross Blue Shield of New Jersey,* Civ. No. 01–5812(JBS), were consolidated under the caption of the earliest docket, *Carducci, et al. v. Aetna U.S. Healthcare,* No. 01–4675(JBS). Parties in another action, *Bibbs v. AmeriHealth, Inc.,* Civ. No. 02–1155(JBS), agreed to have their case consolidated under the *Carducci* docket for purposes of the remand motion; they have since joined the present motion to dismiss.[2]

---

1. In *Carducci,* plaintiffs Caroline Carducci and David Labinski have accepted the offer of judgment by defendant Aetna U.S. Healthcare under Rule 68, Fed.R.Civ.P., in October, 2002, and only a motion for attorney's fees remains pending in that suit. This Opinion, therefore, addresses only the dispositive motions filed in *Levine, West, Collins, Bogurski, Edmonson, Barbour,* and *Bibbs.*

2. Defendant AmeriHealth concurrently filed a motion for summary judgment which is specific to the *Bibbs* action. [Docket Item 48–1 in *Carducci.*] The Court will consider this summary judgment motion in section II(D), *infra.*

Parties in another action, *Barbour v. CIG-NA Corp.*, Civ. No. 02–417(JBS), agreed to consolidate under the *Carducci* docket for purposes of the motion to dismiss if defendant's motion to compel arbitration is not granted.[3]

The present cases were consolidated because their motions to remand and motions to dismiss all dealt with similar issues arising under the Employee Retirement Income Security Act of 1974 ("ERISA"). Each was originally filed as a class action complaint in New Jersey Superior Court based on *Perreira v. Rediger*, 169 N.J. 399, 778 A.2d 429 (2001), where the New Jersey Supreme Court held that, under New Jersey statute N.J.S.A. 2A:15–97, a health insurer who expended funds on behalf of an insured may not recoup the funds through a subrogation or reimbursement liens if the insured recovers from a third-party tortfeasor. In the present cases, each plaintiff was insured under an employee benefit health plan which paid health benefits due to plaintiff's personal injuries, and where the plaintiff later recovered from a third party tortfeasor in connection with such injuries, the defendant insurers sought to enforce the plans' subrogation clauses to recoup from these plaintiffs the sums previously paid to them under the health benefit plans, by attaching subrogation or reimbursement liens to the plaintiffs' tort recoveries. Each plaintiff brought suit against his or her health insurer, alleging that it was unjustly enriched by subrogation and reimbursement liens placed on their personal injury lawsuit settlements.

On January 25, 2002 and on April 4, 2002, this Court heard oral argument on the remand motions. The issue was whether the monies that plaintiffs sought—which were monies that the insurers took pursuant to the subrogation clauses in the employee benefit healthcare contracts—were "benefits due" under ERISA section 502(a)(1)(B). This Court, in an Opinion and Order dated May 28, 2002, determined that the monies were "benefits due" under section 502(a)(1)(B), so that the state law unjust enrichment claims were completely preempted by federal law and were properly removed to federal court. *See Carducci, et al. v. Aetna U.S. Healthcare*, 204 F.Supp.2d 796 (D.N.J.2002).[4]

In the May 28, 2002 Opinion and Order on the remand motions, this Court did not determine the issues presented in the present motions to dismiss, namely whether plaintiffs' state law unjust enrichment claims must be dismissed as completely preempted under section 502(a)(1)(B), or must be dismissed as conflict preempted under section 514(a). The Court will now consider these issues.

## II. DISCUSSION

### A. Motion to Dismiss Standard of Review

The Court must deny a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted

---

**3.** The motion to compel arbitration and to dismiss in the *Barbour* action was granted on March 4, 2003. Therefore, this Court will dismiss the present *Barbour* conditional motion to dismiss, [Docket Item 52–1 in the *Carducci*, No. 01–4675 docket], as moot.

**4.** Plaintiffs filed a motion to alter or amend the May 28, 2002 Opinion and Order to allow them to seek an interlocutory appeal of the decision. This Court treated the motion as seeking certification of an interlocutory appeal to the United States Court of Appeals for the Third Circuit pursuant to 28 U.S.C. § 1292(b), and, in a July 24, 2002 Opinion and Order, denied the motion without prejudice because the plaintiffs had not met their burden of showing a substantial ground for difference of opinion on the issue or that an interlocutory appeal would materially advance the ultimate termination of the litigation.

"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A district court must accept any and all reasonable inferences derived from the facts and must view all allegations in the complaint in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir. 1994).

The plaintiff does not need to plead evidence or plead the facts that are the basis for the claim. *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 446 (3d Cir.1977); *In re Midlantic Corp. Shareholder Litig.,* 758 F.Supp. 226, 230 (D.N.J.1990). The question before the court is not whether plaintiffs will ultimately prevail; rather, it is whether they can prove any set of facts in support of their claims that would entitle them to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Therefore, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, plaintiff's allegations state a legal claim. *Markowitz,* 906 F.2d at 103.

### B. *Motion to Dismiss Analysis*

The present motions require the Court to consider ERISA preemption. The Court has previously determined that plaintiffs' claims, although pleaded under state law, are section 502(a)(1)(B) claims for benefits, and therefore that these claims lie within the exclusive federal jurisdiction of section 502(a)(1)(B). *See Carducci,* 204 F.Supp.2d at 803–04. The Court will now consider whether plaintiffs' claims must be dismissed because they are completely preempted, or whether plaintiffs' claims must be dismissed because they are conflict preempted under section 514(a).

### 1. *Complete Preemption Dismissal under Section 502(a)*

Based on this Court's previous determination that plaintiffs' claims are within the scope of jurisdiction described by section 502(a)(1)(B), defendants argue that this Court must dismiss them under section 502(a)(1)(B) for three reasons: (1) plaintiffs have only alleged state law causes of action and not section 502(a)(1)(B) claims, (2) plaintiffs have not joined the appropriate defendants, and (3) plaintiffs have not exhausted their plans' administrative remedies. This Court will consider each reason in turn and will find that they do not provide a basis for dismissal.

### (a) Failure to allege ERISA cause of action

■ Defendants first seek dismissal because plaintiffs' complaints do not allege ERISA section 502(a)(1)(B) causes of action. They argue that because section 502(a)(1)(B) only allows a civil action "to recover benefits due ... under the terms of [a] plan," plaintiffs needed to explicitly seek such benefits. Because plaintiffs, in their complaints, seek recovery based solely on state law, defendants argue that there is no section 502(a)(1)(B) action for this Court to consider. This Court disagrees and finds that its prior determination that plaintiffs' state law claims were 502(a)(1)(B) claims for benefits indeed allows the Court to consider them as 502(a)(1)(B) claims for benefits.

■ Congress provided for complete preemption of state law claims in ERISA section 502(a). *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65–66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Complete preemption occurs when Congress passes a

law that "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63, 107 S.Ct. 1542. In effect, the complete preemption transforms the claim that is within the "select group" into a claim that is "federal in character." *Darcangelo v. Verizon Communications Inc.,* 292 F.3d 181, 187 (4th Cir.2002).

■ The complete preemption provided for in ERISA, therefore, means that when a plaintiff files a complaint that contains a state law claim that is within the scope of ERISA section 502(a), the claim is transformed into an ERISA section 502(a) federal claim. *Id.* The cause of action may then be removed to federal court without violating the well-pleaded complaint rule because the complaint contains the transformed federal claim on its face. *Id.* At that point, the federal court can either treat the claim as a federal claim under section 502(a), *id.* at 195, or can dismiss the complaint without prejudice to refiling a complaint that alleges an ERISA claim for benefits, *Miller v. Aetna Healthcare,* No. 01–2443, 2001 WL 1609681 at *2 (E.D.Pa. Dec.12, 2001).

The United States District Court for the Eastern District of Pennsylvania has found that "[w]hen a plaintiff's claims are completely preempted by ERISA, dismissal without prejudice to assert an ERISA claim is an appropriate course." *See Miller,* 2001 WL 1609681 at *2. While there likely are many situations where a dismissal would be appropriate to allow the plaintiffs to replead their claims as ERISA claims, this Court finds that it is more appropriate in this case to treat the claims as ERISA claims.

The principal reason for this Court's decision is based on the extensive motion practice already engaged in by the parties. In *Miller,* the Court considered the motion to remand and the motion to dismiss simultaneously. Here, defendants have been aware that plaintiffs' claims are section 502(a) "claims for benefits" since this Court's decision in May 2002 on the remand motions, and have been aware that the basis for the claims for benefits are the reimbursement and subrogation provisions in their health insurance contracts. For purposes of this motion to dismiss, the defendants treated the claims as claims for benefits under section 502(a), stating that "it is instructive to consider the complaint as a claim for benefits." (Defs.' Br. in *Levine* at 10.) In view of this procedural history, the Court will not dismiss the present complaints and require the plaintiffs to refile complaints which allege section 502(a) claims, but will treat the complaints as alleging state claims now transformed into federal ERISA claims for benefits.

**(b) Failure to plead plan as section 502(a)(1)(B) defendant**

Defendants next argue that this Court must dismiss because they are not the proper defendants. Defendants first argue that plaintiffs may only proceed against employee benefit plans under section 502(a)(1)(B). (Defs.' Br. in *Levine* at 11.) Alternatively, defendants argue that even if plaintiffs could proceed against the administrators of their plans, plaintiffs never alleged that defendants were plan administrators in their complaints. (Defs.' Reply Br. in *Levine* at 6 n. 3.)

Whether a plan administrator may be liable under section 502(a)(1)(B) is an issue that has divided the courts. *See Hall v. Lhaco, Inc.,* 140 F.3d 1190, 1194 (8th Cir. 1998) (citing cases). Some courts find that "ERISA permits suits to recover benefits only against the plan as an entity" by linking section 502(a)(1)(B) which allows "a civil action ... to recover benefits due ... under the terms of [a] plan" with section 502(d) which states that:

An *employee benefit plan* may sue or be sued under this subchapter as an entity.... Any money judgment under this subchapter against an *employee benefit plan* shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter.

*Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1490 (7th Cir.1996) (citing *Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1324–25 (9th Cir.1985)) (emphasis added); *see also Guiles v. Metropolitan Life Ins. Co.,* No. 00–5029, 2002 WL 229696 (E.D.Pa. Feb.13, 2002). Other courts have found that the statutory language allows a plaintiff to proceed against an employee benefit plan, but does not limit the plaintiff to suits against plans. *See Hamilton v. Allen–Bradley Co.,* 244 F.3d 819, 824 (11th Cir.2001); *Taft v. Equitable Life Assurance Society,* 9 F.3d 1469 (9th Cir.1994); *see also Vaughn v. Metropolitan Life Ins. Co.,* 87 F.Supp.2d 421, 425 (E.D.Pa.2000). Such courts find that a plaintiff may proceed against the plan or against the plan's administrator. *Id.* The Third Circuit has not determined whether a plaintiff may bring suit against a plan administrator under section 502(a)(1)(B).

■ This Court will allow suit against plan administrators under section 502(a)(1)(B) for two reasons. First, the Third Circuit has allowed suit against entities other than benefit plans under section 502. In *Curcio v. John Hancock Mutual Life Ins. Co.,* 33 F.3d 226 (3d Cir.1994), the Third Circuit considered whether a plaintiff could bring suit against a party other than the plan under section 502(a)(3)(B)'s equitable relief provision,[5] and concluded that the plaintiff could proceed against a plan administrator who was also a fiduciary. In *Mitchell v. Eastman Kodak Co.,* 113 F.3d 433 (3d Cir.1997), the Third Circuit never mentioned the present issue, but considered a 502(a)(1)(B) claim against a plan administrator.

Second, the language of section 502 supports this Court's result. It is true that section 502(d) explicitly permits suit against employee benefit plans. However, this Court does not read section 502(d) as a limitation on all section 502 actions. It is clear that section 502(c) allows suit against plan administrators and that section 502(a)(3) allows suit against fiduciary plan administrators. *See* 29 U.S.C. § 1132(c); *Curcio,* 33 F.3d at 234–35. The language of section 502(d) also infers that liability against a person may be established under section 502, as it provides that judgments against a plan are not enforceable against any other person *"unless liability against such person is established in his individual capacity under this subchapter."* (emphasis added). Therefore, this Court finds that liability can be established against plan administrators under section 502(a)(1)(B).[6]

---

**5.** Section 502(a)(3) provides that a civil action may be brought by a participant, beneficiary, or fiduciary:

(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or

(B) to obtain other appropriate equitable relief

(i) to redress such violations or

(ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).

**6.** A plan "administrator" is defined as:

(i) the person specifically so designated by the terms of the instrument under which the plan is operated;

(ii) if an administrator is not so designated, the plan sponsor; or

(iii) the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A).

The question remains as to whether defendants are plan administrators. Defendants argue that the action must be dismissed because plaintiffs did not allege that they are plan administrators. Plaintiffs argue that they included allegations in each complaint which support a finding that the defendants were plan administrators, because they claimed that defendants operate health benefit systems which supplied health insurance policies which covered plaintiffs. (*See Edmonson* Complaint ¶¶ 6–7; *West* Complaint ¶¶ 4–5; *Collins* Complaint ¶¶ 4–5; *Bogurski* Complaint ¶¶ 4–5; *Levine* Complaint ¶¶ 6–7; *Bibbs* Complaint ¶¶ 6–8.)

■ Whether a defendant is a plan administrator is a factual question which requires an inquiry into the plan document and the factual circumstances surrounding the administration of the plan. *Hamilton,* 244 F.3d at 824. To succeed on a motion to dismiss, plaintiffs only need to show that the pleadings, when viewed in the light most favorable to them, allege facts which warrant relief. Here, the Court has considered plaintiffs' complaints and has found that they include allegations that support a finding that defendants are plan administrators. Therefore, it is plausible that defendants may be held liable under section 502(a)(1)(B) and defendants' argument that they are the "wrong" defendants does not warrant relief on this motion to dismiss.[7] This Court will therefore deny dismissal on this ground, but will require plaintiffs to file a clarifying amendment to their pleadings within fourteen days from the date of this decision which clarifies that they have brought suit against defendants in their status as plan administrators.

**(c) Failure to exhaust administrative remedies**

■ Defendants next argue that this Court should dismiss under section 502(a)(1)(B) because plaintiffs did not exhaust administrative remedies before filing this action. Plaintiffs argue that they should be excused from the exhaustion requirement because the facts of their cases show that bringing their claims in the administrative process would have been futile.

■ Every employee benefit plan must provide administrative remedies for participants whose claims for benefits have been denied. ERISA § 503; 29 U.S.C. § 1133. Because of this, the Third Circuit generally requires exhaustion of the administrative process under the plan before legal action may be instituted.[8] *D'Amico*

---

**7.** The plan documents which have been submitted also support this conclusion as they indicate that defendants "maintained responsibility over the administration of the plan." *See Curcio,* 33 F.3d at 233.

On a motion to dismiss, the Court generally does not consider documents extraneous to the pleadings, but the Court may consider a "document integral or explicitly relied upon in the complaint ... without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Secs. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997). Here, the plaintiffs' claims are entirely based on the provisions within their employee benefit plans and defendants have expressly relied on the plan documents in filing the present

motion. (*See* Defs.' Br. in *Levine* at 5–6 n. 2.) Thus, either party may cite to the benefit plan documents, since the plan is referred to in the complaints, without converting this Rule 12(b)(6) motion into a motion for summary judgment.

**8.** The Third Circuit does not require exhaustion for section 502(a)(3) claims to enforce statutory rights established by ERISA, for section 510 discrimination claims, or for claims of failure to provide a summary plan description. *See Zipf v. AT & T,* 799 F.2d 889, 891 (3d Cir.1986); *Harrow v. Prudential Ins. Co.,* 279 F.3d 244, 253 (3d Cir.2002). A party cannot waive the exhaustion requirement by artfully pleading benefit claims as statutory rights claims. *Harrow,* 279 F.3d at 253.

*v. CBS Corp.,* 297 F.3d 287, 290–91 (3d Cir.2002). Exhaustion is intended to "reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." *Harrow v. Prudential Ins. Co.,* 279 F.3d 244, 249 (3d Cir.2002) (quoting *Amato v. Bernard,* 618 F.2d 559, 567 (9th Cir.1980)). It also helps ERISA plan trustees to "expertly and efficiently manage their funds" because it "prevent[s] premature judicial intervention in their decision-making process." *Id.*

The Third Circuit strictly enforces the exhaustion requirement, but recognizes an exception to it "when resort to the administrative process would be futile." *Berger v. Edgewater Steel Co.,* 911 F.2d 911, 916 (3d Cir.1990). For the exception to apply, the plaintiff must provide a "clear and positive showing of futility" to the district court." *D'Amico,* 297 F.3d at 293. To determine whether to excuse exhaustion, the court should consider:

> (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile.

*Harrow,* 279 F.3d at 250. If the court dismisses or grants summary judgment for failure to exhaust, it must do so without prejudice to plaintiff's refiling the claim after exhaustion of the administrative process. *D'Amico,* 297 F.3d at 294.

Here, plaintiffs readily admit that they never pursued their claims under their insurance policies' administrative processes, but they argue that it would have been futile to do so. This Court has considered the five factors of the futility exception and has decided that it cannot determine whether the futility exception to the exhaustion requirement applies at this stage because the inquiry requires factual determinations. At this motion to dismiss stage, it does seem clear that plaintiffs did not "diligently pursue administrative relief" because they did not pursue administrative relief at all. However, it is unclear whether plaintiffs "acted reasonably in seeking judicial relief" or whether plaintiffs would have obtained relief in the administrative process. Prior to the New Jersey Supreme Court's decision in *Perreira v. Rediger,* 169 N.J. 399, 778 A.2d 429 (2001), each defendant insurer had a fixed policy denying benefits taken pursuant to the reimbursement and subrogation provisions. Factual issues remain as to whether the insurers still had a fixed policy denying benefits after *Perreira.* This Court will not make the factual determination at this time, though it has been presented with information on the subject. *See Bibbs,* Defs.' Br., Ex. A, Brill Decl. ¶ 4 (stating that "[a]s a direct result of the New Jersey Supreme Court's decision in *Perreira,* AmeriHealth stopped enforcing the reimbursement/subrogation provisions … and has no plans to do so in the future.)" *But see Bibbs,* Defs.' Br., Ex. B, Biemer Decl., Ex. 2 (requesting payment of lien on January 2, 2002, six months after *Perreira* was decided on June 26, 2001). At this time, it is enough that plaintiffs have shown a set of facts under which they may be granted relief by showing that exhaustion may have been futile. Therefore, this Court will not dismiss the present action for failure to exhaust. A defendant asserting that exhaustion would not be futile as a matter of fact in its individual circumstances may bring a motion for summary judgment on this ground.

For all of these reasons, this Court will deny defendants' motion to dismiss plain-

tiffs' claims under ERISA section 502(a)(1)(B). The Court will next consider whether the claims should be dismissed under ERISA section 514(a).

### 2. *Conflict Preemption Dismissal under Section 514(a)*

Defendants next argue that this Court should dismiss these actions because plaintiffs' state law claims are conflict preempted by ERISA section 514(a). To determine whether the claims are conflict preempted, the Court must consider three clauses within section 514, namely the express preemption clause, the savings clause, and the deemer clause.

The express preemption clause, section 514(a), broadly preempts state regulations of employee benefit plans so that employee benefit plans are generally not subject to state regulation. It states:

> Except as provided in subsection (b) of this section [the savings clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...

29 U.S.C. § 1144(a). The savings clause, section 514(b)(2)(A), then "saves" state laws that govern insurance so that employee benefit plans may be subject to state laws that regulate insurance generally. It provides:

> Except as provided in subparagraph (B) [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking or securities.

29 U.S.C. § 1144(b)(2)(A). Then, the deemer clause, section 514(b)(2)(B), removes self-funded employee benefit plans from application of state laws that regulate insurance. It provides:

> ■ Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B).[9]

■ The Supreme Court has noted that the "relationship between these clauses is not a model of legislative drafting." *Metropolitan Life Ins. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). However, the Court has instructed lower courts about the appropriate way to apply the sections to be consistent with Congressional intent. *Bill Gray Enter., Inc. v. Gourley,* 248 F.3d 206, 213 (3d Cir.2001). First, the court must determine if the state law relates to employee benefit plans to determine whether the law fits within section 514(a)'s express preemption clause. If the law relates to employee benefit plans, it is preempted unless the court determines that the state law regulates insurance so fits within section 514(b)(2)(A)'s savings clause. If it is a state insurance law, the court must then determine if the plan is a self-funded plan according to the deemer clause. If the plan is a self-funded plan, the state insur-

---

**9.** The deemer clause prevents application of state insurance laws to self-funded employee benefit plans because it prevents the plans from being deemed insurance companies. *FMC Corp. v. Holliday,* 498 U.S. 52, 61, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). The clause does not prevent application of state insurance laws to insured employee benefit plans because the "insurance company that insures [the] plan remains an insurer for purposes of state laws 'purporting to regulate insurance' after application of the deemer clause." *Id.*

ance law does not apply to the plan. If the plan is an insured plan, the state law applies.

Here, plaintiffs have brought unjust enrichment claims, arguing that the defendants violated New Jersey's collateral source statute, N.J.S.A. 2A:15–97, as interpreted by the Supreme Court in *Perreira v. Rediger*, 169 N.J. 399, 778 A.2d 429 (2001). Plaintiffs argue that the state antisubrogation rule contained in the collateral source statute applies to their employee benefit plans. First, they argue that the statute does not "relate to" their employee benefit plans, so is not preempted. Second, they argue that if the statute relates to their plans, it still applies to their plans because it is a state insurance law saved by the savings clause. Third, they argue that the law applies under the deemer clause because defendants' plans are insured plans. Defendants, on the other hand, argue that the antisubrogation rule does not apply to them because the statute is preempted because it relates to employee benefit plans and is not saved because it is not a state insurance law.

This Court has considered the arguments of counsel and has determined that the statute's anti-subrogation rule relates to employee benefit plans, is saved as a state law that regulates insurance, and applies to defendants' plans because they are insured plans. Therefore, for the following reasons, the New Jersey anti-subrogation rule is not preempted by ERISA and this Court must deny defendants' motion to dismiss based on ERISA's conflict preemption provision.

**(a) Whether N.J.S.A. 2A:15–97 "relates to" plaintiffs' employee benefit plans**

■ Plaintiffs argue that the New Jersey collateral source statute, N.J.S.A. 2A:15–97 does not relate to ERISA plans because it is a law of general application that "does not in any way target ERISA plans." (Pls.' Br. at 6.) Defendants, however, argue that "[o]ne would be hard pressed to find a law that 'relates to' an employee benefit plan more than [this] state law that purports to invalidate terms of that plan." (Defs.' Reply in *Levine* at 12.)

■ A state law relates to an ERISA plan "if it has a connection with or reference to such a plan." *Egelhoff v. Egelhoff*, 532 U.S. 141, 147, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). The preemption provision is "clearly expansive," and yet should not be "taken to extend to the furthest stretch of its indeterminacy" where every state law would be preempted. *Egelhoff*, 532 U.S. at 146, 121 S.Ct. 1322 (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)). The Supreme Court requires the district court to consider "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive as well as to the nature of the effect of the state law on ERISA plans" when deciding whether the law relates to an ERISA plan. *Egelhoff*, 532 U.S. at 147, 121 S.Ct. 1322 (quoting *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr.*, 519 U.S. 316, 325, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997)).

In 1990, the Supreme Court considered Pennsylvania's antisubrogation law and determined that it related to employee benefit plans even though it had general applicability.[10] *Holliday*, 498 U.S. at 58, 111

---

10. The Pennsylvania statute provided, in part:

> In actions arising out of the maintenance or use of a motor vehicle, there shall be no

S.Ct. 403. The Court explained that ERISA's preemption provision was not meant "to pre-empt only state laws specifically designed to affect employee benefit plans." *Id.* Instead, it was also intended to preempt certain laws of general application as its "pre-emptive scope [is] as broad as its language." *Id.* at 59, 111 S.Ct. 403 (quoting *Shaw,* 463 U.S. at 98, 103 S.Ct. 2890). The Court found that the Pennsylvania anti-subrogation law related to employee benefit plans because it:

> prohibits plans from being structured in a manner requiring reimbursement in the event of recovery from a third party. It requires plan providers to calculate benefit levels in Pennsylvania based on expected liability conditions that differ from those in States that have not enacted similar anti-subrogation legislation. Application of differing state subrogation laws to plans would therefore frustrate plan administrators' continuing obligation to calculate uniform benefit levels nationwide.

*Id.* at 60, 103 S.Ct. 2890.

Plaintiffs argue that the New Jersey collateral source rule, interpreted by the New Jersey Supreme Court to include an antisubrogation rule, is different from the Pennsylvania antisubrogation law because

the New Jersey law was initially passed as a "tort-reform effort aimed at eliminating double recoveries to plaintiffs and thereby controlling spiraling liability insurance costs." (Pls.' Br. at 5.) They argue that the collateral source statute, therefore, does not relate to employee benefit plans because it was not directly targeted toward employee benefit plans. (*Id.*)

This Court, however, finds that the New Jersey collateral source rule relates to employee benefit plans. While plaintiffs are correct that the statute itself does not mention subrogation, reimbursement, or health insurance plans, *see* N.J.S.A. 2A:15–97,[11] the New Jersey Supreme Court has determined that it was passed to affect employee benefit plans, *see Perreira v. Rediger,* 169 N.J. 399, 418, 778 A.2d 429 (2001). The court explained that when the statute was passed,

> [t]he Legislature had two choices: to benefit health insurers by allowing repayment of costs expended on a tort plaintiff, or to benefit liability carriers by reducing the tort judgment by the amount of health care benefits received. As the legislative history reveals, the choice was made to favor liability carriers.

---

right of subrogation or reimbursement from a claimant's tort recovery with respect to ... benefits ... paid or payable under section 1719.

75 Pa. Cons.Stat. § 1720 (1987). Section 1719 provided that the anti-subrogation statute applied to:

any program, group contract or other arrangement for payment of benefits ... including, but not limited to, benefits payable by a hospital plan corporation or a professional health service corporation.

75 Pa. Cons.Stat. § 1719 (1987).

**11.** N.J.S.A. 2A:15–97 provides:

In any civil action brought for personal injury or death, except actions brought pursuant to the provisions of [the No Fault

Auto Insurance Law], if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable. Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act.

*Perreira,* 169 N.J. at 410–11, 778 A.2d 429. The court thus indicated that the Legislature was informed about the effect on health insurers; it made a choice to deny subrogation and reimbursement to health insurers. *Id.* at 411, 778 A.2d 429. The New Jersey Supreme Court found that the Legislature understood that its collateral source rule would require health insurers to accept the added risk that it would have to pay for injuries caused by third parties, so would lead them to calculate the "coverage and the premium for the insurance . . . on this unknown." *Id.* at 417, 778 A.2d 429.

Moreover, this Court sees no critical distinction between New Jersey's anti-subrogation law and Pennsylvania's antisubrogation law which was found by the United States Supreme Court to relate to employee benefit plans. The Pennsylvania statute does expressly prohibit subrogation and reimbursement, whereas the New Jersey statute has just been interpreted to contain the subrogation and reimbursement requirements. Each, though, has the same effect on employee benefit plans. No significant difference can result when one legislature includes the word "subrogation" in its statute and the other leaves the statute's effect on subrogation to the interpretation of the judiciary.

This Court thus finds that the New Jersey anti-subrogation rule, as contained in New Jersey's collateral source statute, relates to employee benefit plans.

**(b) Whether N.J.S.A. 2A:15–97 is "saved" as a state law that regulates insurance**

■ Having found that New Jersey's anti-subrogation rule relates to employee

benefit plans, this Court must determine whether it is saved from preemption under ERISA section 514(b)(2)(A)'s savings clause. The Court finds that it is saved as a law that regulates insurance.

■ In deciding whether a law "regulates insurance" under ERISA's savings clause, the court must "start with a common-sense view of the matter under which a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." *Moran,* 122 S.Ct. at 2159 (quoting *Metropolitan Life Ins. Co.,* 471 U.S. at 740, 105 S.Ct. 2380; *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 50, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). The court should focus on the "primary elements of an insurance contract[, which] are the spreading and underwriting of a policyholder's risk." *Moran,* 122 S.Ct. at 2159. The court should then "test the results of the common-sense enquiry" by considering the three factors used to determine what insurance laws are spared from federal preemption under the McCarran–Ferguson Act, 15 U.S.C. §§ 1011, *et seq.*[12] Laws regulating insurance for McCarran–Ferguson purposes are those which target practices that (1) have the "effect of transferring or spreading a policyholder's risk," (2) are an "integral part of the policy relationship between the insurer and the insured," and (3) are "limited to entities within the insurance industry." *Moran,* 122 S.Ct. at 2163 (quoting *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982)). The three factors are "guideposts;" a state law is not required to satisfy all three factors to be saved under the ERISA savings clause. *Id.*

**12.** The McCarran–Ferguson Act requires that the business of insurance be subject to state regulation, and, subject to few exceptions, provides requires that "[n]o Act of Congress shall be construed to invalidate . . . any law enacted by any State for the purpose of regulating the business of insurance . . ." *Moran,* 122 S.Ct. at 2159 n. 4 (quoting 15 U.S.C. § 1012(b)).

Here, defendants argue that New Jersey's collateral source rule is not "saved" as a law regulating insurance because the common-sense inquiry shows that the law was not "specifically directed toward·th[e insurance] industry." (Defs.' Br. in *Levine* at 26–27 (citing *Dedeaux*, 481 U.S. at 50, 107 S.Ct. 1549)). Defendants further argue that the three McCarran–Ferguson factors show that the collateral source rule is not an insurance law, arguing that the statute does not transfer the policyholder's risk to the insurer, is not an "integral part of the policy relationship between the insurer and the insured," and applies to all civil litigants, not just to "entities within the insurance industry." (Defs.' Br. in *Levine* at 29–32). Plaintiffs argue that there can be "no dispute" that the collateral source statute regulates insurance, mainly because the United States Supreme Court found that Pennsylvania's antisubrogation statute was an insurance regulation, *Holliday*, 498 U.S. at 60, 111 S.Ct. 403, and because the New Jersey Supreme Court explained that the New Jersey statute focuses on the insurance industry, *Perreira*, 169 N.J. at 409–412, 778 A.2d 429.

The common sense inquiry here does show that the collateral source rule was directed toward the insurance industry. Defendants are correct that the statute does not refer to health insurance or to subrogation and reimbursement clauses, and that the statute states that it applies to plaintiffs in "any civil action" who receive benefits for their injuries from "any other source" besides the judgment. (Defs.' Reply in *Levine* at 14.) The Supreme Court of New Jersey recognized this as well, stating that "[o]n its face, N.J.S.A. 2A:15–97 ... is silent regarding any right to subrogation or reimbursement on the part of the health insurers." *Perreira*, 169 N.J. at 409, 778 A.2d 429.

However, the court then aptly explained the history of the statute and its intended effect on insurance. It quoted the Passed Bill memo prepared by Governor's counsel which stated that:

> [t]his bill attempts to *reduce the cost of liability insurance* by reducing the likelihood of a "double recovery" in a liability award for items which were already compensated by insurance or by other "collateral" sources, other than a tortfeasor.

*Perreira*, 169 N.J. at 410, 778 A.2d 429 (emphasis in original). The New Jersey Supreme Court concluded that the statute had more than one purpose. "To be sure, its primary purpose was to disallow double recovery to plaintiffs, but a secondary goal was clearly the containment of spiraling insurance costs." *Id.* The court decided that the legislature made a "separate legislative decision" as to which "segment of the insurance industry" would be the beneficiary of the double recovery disallowance. *Id.* If health insurers were favored, they would be permitted to recover pursuant to subrogation and reimbursement liens and liability insurers would need to pay the full amount of a judgment; then, the insured would not double recover. *Id.* On the other hand, if liability insurers were favored, the health insurers would not be allowed to recover pursuant to subrogation and reimbursement liens and the liability insurers would pay less than the full amount of a judgment by deducting amounts paid by the health insurer; then, the insured would not double recover. *Id.* The court found that the legislature decided to favor the liability insurance carriers by preventing the health insurance carriers from collecting pursuant to subrogation and reimbursement liens. *Id.* at 411–18, 778 A.2d 429.

The *Perreira* decision makes plain that the collateral source rule was directed toward insurance and has an intentional impact on the terms of insurance contracts.

The court specifically held that in passing the statute, the legislature intended that health insurers be prevented from "invok[ing a] contract provision as a basis for reimbursement." *Id.* at 416, 778 A.2d 429. This Court will follow the *Perreira* court and also find that the statute was intended to directly effect and regulate the insurance industry.

The McCarran–Ferguson factors confirm this conclusion. First, the law has the effect of transferring or spreading a policyholder's risk. As explained by the Sixth Circuit, the "logical effect" of preventing the insurance companies from recovering paid medical costs from an insured's tort judgment is to "decrease the premiums of health care providers' insurance and increase the premiums of health insurance—i.e., spread risks." *Medical Mutual of Ohio v. deSoto*, 245 F.3d 561, 574 (6th Cir.2001). The New Jersey Supreme Court recognized that the New Jersey collateral source statute has this risk-shifting effect in the insurance industry, as it stated that one purpose of the collateral source statute is "to shift the burden, at least to some extent, from the liability and casualty insurance industry to health and disability third-party payers." *Perreira*, 169 N.J. at 411, 778 A.2d 429 (citing *Lusby v. Hitchner*, 273 N.J.Super. 578, 591, 642 A.2d 1055 (App.Div.1994)).

Second, the law is an integral part of the policy relationship between the insurer and the insured. The law requires plan providers to calculate benefit levels and premium amounts with the knowledge that they will be unable to recover monies expended for injuries caused to their insured by a third person. *Ward*, 526 U.S. at 374, 119 S.Ct. 1380. As a result, it "changes the bargain between insurer and insured." *Id.*

Defendants, however, argue that the statute is not an integral part of the insured's relationship with his insurer, but is a "matter of indifference" since its effect on the insured is:

> essentially non-existent. By definition, the insured plan participant received benefits for his medical care from the plan. The statute's only effect is to prohibit the participant from recovering the value of those benefits from the tortfeasor and transferring them back to the plan. At the end of the day ... the participant remains in the same economic position in either event.

(Defs.' Br. in *Levine* at 31–32.) It is true that after a personal injury judgment, the plaintiff only recovers for his injuries once and likely does not care whether his health insurer or the tortfeasor's liability insurer bore the cost of his medical care. However, it is not true that the plaintiffs' overall economic position is the same. Because the antisubrogation rule places the responsibility for all medical payments on the health insurer, it also places responsibility for higher premiums on the health insurer's insureds.[13] As a result, this Court finds that the anti-subrogation rule is an integral part of the relationship between insurer and insured.

The third McCarran–Ferguson factor is also met here because the anti-subrogation rule is limited to entities within the insurance industry. Defendants argue that it is not limited to the insurance industry because the collateral source rule, on its face, refers to "all civil actions" and to amounts obtained from "any other source."

At issue here, though, is the anti-subrogation rule that is contained in the collateral source statute. It is a rule that the New Jersey Supreme Court has found tar-

---

**13.** The insured under the health policy will likely not enjoy an equal reduction in his liability insurance premiums as there is no indication that everyone covered with health insurance is also covered by liability insurance.

gets the insurance industry and only applies to the insurance industry. The court summarized its holding by stating that a "health insurer, who expends funds on behalf of an insured, [cannot] recoup those payments through subrogation or contract reimbursement when the insured recovers a judgment against a tortfeasor." *Perreira*, 169 N.J. at 403, 778 A.2d 429. Such a rule is limited to entities within the insurance business.

For these reasons, this Court finds that the antisubrogation rule announced in *Perreira* and included in N.J.S.A. 2A:15–97 is saved from preemption under ERISA's savings clause as a state law which regulates insurance.

### (c) Whether N.J.S.A. 2A:15–97 applies in spite of the deemer clause

■ Because this Court has found that the anti-subrogation rule is saved by the savings clause, the rule applies to defendants unless the deemer clause exempts them from its application. The Supreme Court has made plain that the deemer clause only exempts self-funded employee benefit plans. Insurance companies are still subject to state insurance regulations even though they administer an employee benefit plan. *Holliday*, 498 U.S. at 61, 111 S.Ct. 403. Here, it is undisputed that defendants are insurance companies. As a result, they are not exempted from state insurance regulation through the deemer clause.

Therefore, this Court finds that the New Jersey antisubrogation rule relates to employee benefit plans, is saved from preemption as an insurance regulation, and applies to defendants in spite of the deemer clause. Therefore this Court will deny defendants' motion to dismiss because the state anti-subrogation provision is not conflict preempted.

### C. *Additional Arguments for Motion to Dismiss*

Defendants have presented three additional alternative arguments to support their motion to dismiss. First, all defendants argue that the *Perreira* decision should not apply retroactively to the subrogation and reimbursement liens at issue in this case. Second, the defendants in *Levine, Bogurski,* and *Edmonson* argue that plaintiffs' claims should be dismissed under the voluntary payment doctrine. Third, the defendants in *Collins* and *West* argue that plaintiffs' claims should be dismissed for lack of standing. This Court has considered the three arguments and will not dismiss based on them.

### 1. *Retrospective effect of Perreira v. Rediger, 169 N.J. 399 (2001)*

■ All of the consolidated defendants argue that plaintiffs' claims should be dismissed because *Perreira* was not intended to apply retrospectively to subrogation and reimbursement liens held before *Perreira*. This Court finds that *Perreira* may be applied retrospectively as it was in *Perreira*.

■ In New Jersey, a judicial decision generally applies retrospectively. *Reuter v. The Borough Council of The Borough of Fort Lee*, 167 N.J. 38, 42, 768 A.2d 769 (2001). Prospective application may be appropriate, though, if the decision establishes a new rule of law that is a "sudden and generally unanticipated repudiation of a long-standing practice." *Id.* (quoting *State v. Afanador*, 151 N.J. 41, 58, 697 A.2d 529 (1997)). Then, prospective application is only appropriate if (1) the parties and the community justifiably relied on the prior rule, (2) the purpose of the new rule will not be advanced by retroactive application, and (3) the retroactive application of the rule may have an adverse effect on the administration of jus-

tice. *Coons v. American Honda Motor Co.*, 96 N.J. 419, 426, 476 A.2d 763 (1984).

Defendants argue that *Perreira* announced a new rule of law that was a sudden and unanticipated change from the prior law of New Jersey. In support of their argument, they cite New Jersey Administrative Code section 11:4–42.10, a regulation promulgated by the Commissioner of Insurance eight years prior to *Perreira* that permitted subrogation and reimbursement liens in insurance contracts.[14] *See Perreira*, 169 N.J. at 416, 778 A.2d 429 (quoting N.J.A.C. 11:4–42.10). Defendants argue that *Perreira* must be a new rule of law because now the law is the exact opposite of N.J.A.C. ·11:4–42.10. (Defs.' Br. in *Levine* at 21–22.)

The problem with defendants' argument is that the New Jersey Supreme Court considered N.J.A.C. 11:4–42.10 and found that it was inconsistent with the existing law of New Jersey. *Perreira*, 169 N.J. at 416, 778 A.2d 429. The court determined that the long-standing law of New Jersey prevented subrogation and reimbursement liens. *Id.* at 418, 778 A.2d 429. Because the highest state court in New Jersey has determined that the collateral source statute always included the anti-subrogation rule, this Court will follow and find that *Perreira* reflected the existing law of New Jersey. As a result, in spite of N.J.A.C. 11:4–42.10, the decision in *Perreira* was not new and unanticipated.

Defendants have also failed to show the other three factors needed to justify prospective application of a decision. *First*, they argue that they relied on N.J.A.C. 11:4–42.10, but this reliance does not warrant relief because it was not reliance on prior state law. As explained *supra*, the New Jersey Supreme Court found that the regulation did not reflect the prior statutory law of the state. *Second*, defendants argue that the purpose of the *Perreira* rule will not be advanced by retroactive application because it will allow insureds to double recover. The Court, however, has been presented with the allegations of plaintiffs that if the rule is not applied retroactively, they will not recover at all for their medical expenses.[15] Plaintiffs argue that the amount of medical expenses paid by defendants were never recovered in their settlement amounts pursuant to the collateral source rule's provision that any benefits for injuries received "from any other source ... shall be deducted." N.J.S.A. 2A:15–97, *supra*. If they are forced to pay the health insurers now, for amounts which were deducted from the award, they will be paying such amounts out-of-pocket, and not out of a double-recovery. Retrospective application of the *Perreira* rule will avoid this result by letting them retain the settlement proceeds which do not contain amounts for medical expenses, and retain the health benefits previously paid by the health insurers.

---

**14.** N.J.A.C. 11:4–42.10 was repealed after *Perreira* and a new rule was enacted in its place, effective August 5, 2002, which prohibits the inclusion of subrogation and reimbursement provisions in insurance contracts.

**15.** It is clear that the plaintiffs' medical expenses were initially paid by the defendant health insurers. It is not clear that the third-party tort recoveries included amounts which paid for the same medical expenses. Plaintiffs' argue that

defendants wrongly assume as fact that the underlying third-party recoveries included

amounts in compensation for insured medical expenses.... Obviously, there can be no "double recovery" if a plaintiff never received money from the tortfeasor towards medical expenses in the first place. Thus, contrary to defendants' assertion that a refund of money to plaintiffs would cause them to recover twice, plaintiffs here could not even have been made whole since the defendants divested them of the recoveries they received for their uninsured losses.

(Pls.' Br. at 13.)

Retrospective application in such a situation would thus advance the purpose of the *Perreira* rule by avoiding the clear prospect that the insureds' medical expenses would be paid neither by their health plans nor by the third-party tortfeasors. *Third*, defendants have not shown that retroactive application of the rule will have an adverse effect on the administration of justice. They have argued that applying it retroactively would allow insureds to undo settlement agreements entered to satisfy the subrogation or reimbursement liens on their judgments. This argument raises an entirely different issue about the effect of a prior decision on a specific fact pattern. While a decision may have retrospective effect, it may not effect every prior cause of action. The Court will next address the arguments raised in the *Levine, Bogurski*, and *Edmonson* cases as to why the retrospective decision should not reach plaintiffs' claims in their particular cases. As for general retrospectivity, though, defendants have failed to show an adverse effect on the administration of justice. Applying *Perreira* retrospectively should aid justice by ensuring that plaintiffs recover, but do not double recover.

For these reasons, this Court finds that *Perreira* applies retrospectively and will not dismiss based on this argument.

### 2. *Voluntary payment doctrine as applied to Levine, Bogurski, and Edmonson claims*

■ The defendants in the *Levine, Bogurski*, and *Edmonson* actions argue that the *Perreira* decision does not allow plaintiffs to recover monies that they voluntarily agreed to pay defendants to satisfy the liens on their settlement awards. In each case, defendants sent plaintiffs a collection letter and, in response, plaintiffs agreed to pay a lesser amount in full satisfaction of the lien. Defendants argue that the voluntary payment doctrine prevents plaintiffs

from "undoing" these settlement agreements.

■ Under New Jersey law, if a party pays a tax or a fee that is later "set aside by judicial decision," there is a presumption that the taxing entity should refund the money because it "can no longer be honestly retained." *In re: N.J. State Board of Dentistry*, 84 N.J. 582, 587, 423 A.2d 640 (1980). Otherwise, the taxing entity would enrich itself unjustly at the expense of the party, which would "violate one of the cardinal principles of the common law, requiring restitution to prevent unjust enrichment." *Id.* The main exception to this rule is the voluntary payment doctrine. It provides that "where a party, without mistake of fact, or fraud, duress or extortion, voluntarily pays money on a demand which is not enforceable against him, he cannot recover it back." *Id.* at 588, 423 A.2d 640. If the party mistakenly believed that he was legally required to make the payment, his mistake of law will not allow him to recover the money because the rule is premised on the theory that:

> [e]very man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as a reason why the state should furnish him with legal remedies to recover it back.

*Id.*

■ The voluntary payment doctrine, thus, only prevents restitution of amounts previously paid if (1) the payment was voluntarily made, (2) the payor was not under any mistake of fact, and (3) the circumstances of the payment were proper. All are factual questions. 66 Am. Jur.2d § 108.

Defendants argue that the voluntary payment doctrine applies to the claims of plaintiffs Levine, Bogurski, and Edmonson because they voluntarily paid sums in satisfaction of the subrogation and reimburse-

ment liens. While plaintiffs may have been acting under a mistake of law because they thought the liens were enforceable, defendants argue that their mistake of law does not provide relief from the voluntary payment doctrine. (Defs.' Br. in *Levine* at 19.) Plaintiffs argue that their claims should not be dismissed under the voluntary payment doctrine on a motion to dismiss because determining whether it applies "raise[s] a multitude of factual issues." (Pls.' Br. at 11.)

Plaintiffs are correct that this Court cannot dismiss at this juncture based on the voluntary payment doctrine because facts exist under which plaintiffs could be relieved from its application. First, plaintiffs' payment may not have been voluntary because a payment is not voluntary when the plaintiff believed that the law which imposed it was not valid, but made the payment anyway.[16] *N.J. State Bar Ass'n v. Berman,* 259 N.J.Super. 137, 155, 611 A.2d 1119 (App.Div.1992). Such situations generally arise when a plaintiff pays a fee that he believes is invalid, but pays it anyway so that he can continue to practice his profession or continue his business. *See State Board of Dentistry,* 84 N.J. at 588–89, 423 A.2d 640. This Court cannot decide on a motion to dismiss whether plaintiffs believed that the subrogation and reimbursement liens were invalid, but paid in order to continue their health insurance coverage.[17]

Second, the Court cannot now determine whether plaintiffs acted under a mistake of fact when they made the payments or whether defendants acted improperly in making their claims. Plaintiffs state that defendants demanded reimbursement from their settlements or judgments and claimed that they were only seeking the amount of the award that compensated for medical expenses even though plaintiffs "never received money from the tortfeasor towards medical expenses in the first place." (Pls.' Br. at 13.) The Court will not now determine whether plaintiffs made the payments under a mistake of fact, believing that they were paying amounts compensated in their awards, or whether defendants misled plaintiffs into such a belief. Such are questions of fact that are not appropriate at this stage.

Therefore, this Court will not dismiss the claims of plaintiffs Levine, Bogurski, and Edmonson for this reason. This decision is without prejudice to a defendant's right to address this issue on summary judgment when factual development has occurred.

### 3. *Standing doctrine as applied to Collins and West claims*

The defendants in the *Collins* and *West* actions argue that this Court should dismiss for lack of standing under the Constitution because plaintiffs Collins and West have not suffered an injury in fact since defendants' records show that they never paid anything to satisfy the subrogation and reimbursement liens.[18]

---

**16.** A payment is voluntary when made by a plaintiff who believes that the law imposing it is valid, even if the law is later invalidated. *Continental Trailways v. Director, Div. of Motor Vehicles,* 102 N.J. 526, 549–50, 509 A.2d 769 (1986).

**17.** Defendants present exhibits to support this argument. (*See* Defs.' Br. in *Edmonson,* Exs. A, B; Defs.' Br. in *Bogurski,* Exs. B, C, D; Defs.' Br. in *Levine,* Exs. 2, 3.) The Court cannot make factual determinations based on

the documents on this motion to dismiss because plaintiffs claims are not "based on the document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993). Regardless, the letters only show amounts were claimed and paid; they do not show whether such payments were voluntary.

**18.** Defendants in the *Collins* and *West* matters argue that Counts I through III in the plaintiffs' complaints in their cases should be dis-

 It is clear that plaintiffs have statutory standing to sue for benefits under ERISA section 502(a)'s civil enforcement provision because they have each alleged that they are plan participants of the employee benefit plans from which they seek benefits. *See* 29 U.S.C. § 1132(a) (allowing civil action "by a participant or beneficiary to recover benefits due to him under the terms of his plan"). Status as a plan participant which provides statutory standing under ERISA section 502(a), however, does not necessarily provide constitutional standing. *Olsen v. Hegarty,* 180 F.Supp.2d 552, 564 (D.N.J. 2001). A plaintiff must also establish constitutional standing by showing (1) that he suffered an injury-in-fact, (2) that the injury was caused by the named defendant or at least "fairly traceable to the challenged action of the defendant," and (3) that a favorable decision by the court would likely redress his injury.[19] *Pryor v. Nat'l Collegiate Athletic Ass'n,* 288 F.3d 548, 561 (3d Cir.2002) (quoting *Bennett v. Spear,* 520 U.S. 154, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)). The sole issue here is whether plaintiffs Collins, West, and Bibbs have alleged an "injury in fact" when defendants claim they have not paid any monies in satisfaction of the subrogation and reimbursement liens on their settlements.

 An injury in fact is an "invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). An injury in fact may "exist solely by virtue of a statute that creates legal rights, the invasion of which creates standing." *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

 Here, Congress passed ERISA to "protect the interests of participants in employee benefit plans ... by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). In the present suit, plaintiffs seek to protect their rights in their employee benefit plans in federal court; they have alleged that defendants "asserted subrogation liens" against them which unlawfully denied them benefits under their plans. (*Collins* Complaint ¶ 15; *West* Complaint ¶ 15.) Moreover, while defendants argue that plaintiffs have not made payment pursuant to the liens, the *Collins* and *West* complaints, upon which this Court must rely and accept as true, state that "Defendant required Plaintiff ... to reimburse Defendant for those funds expended on behalf of Plaintiff." (*Collins* Complaint ¶ 15; *West* Complaint ¶ 15.)

This Court therefore finds that plaintiffs have alleged an injury in fact in their complaints which is sufficient to support constitutional standing.[20] The Court will

missed for this additional reason. They also argue that the motion should be granted as unopposed because plaintiffs did not specifically reply to this additional standing argument. However, the Court will not grant the motion as unopposed. All parties were encouraged to avoid repetitive briefing and the plaintiffs answered the standing argument in response to the *Bibbs* defendant's summary judgment motion, addressed in section II(D), *infra.* The Court will consider plaintiffs' arguments in *Bibbs* for this *Collins,* and *West* motion.

**19.** When standing is challenged on the basis of the pleadings, the court must "accept as true all material allegations of the complaint, and ... construe the complaint in favor of the complaining party." *Pennell v. City of San Jose,* 485 U.S. 1, 7, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988).

**20.** Defendants have not contested the two other requirements for constitutional standing. Both are present here. Causation is clear as plaintiffs repeatedly allege in their complaints that defendants asserted the unlawful subrogation and reimbursement liens. Redressa-

not dismiss the *Collins* and *West* complaints for this reason. If, however, the defendants in *Collins* and *West* were to withdraw their lien claims, with no reimbursement payments having been made by plaintiffs, one would be hard pressed to find an invasion of a legally protected interest under *Lujan,* or that a favorable decision of the Court would redress such injury where the defendant has already remedied the situation.[21]

### D. *Bibbs v. AmeriHealth, Inc., Civ. No. 02–1155(JBS) Summary Judgment Motion*

■ Defendant AmeriHealth seeks summary judgment on plaintiff Bibbs' claims for compensatory damages because plaintiff never paid the subrogation lien on his settlement. Defendant also seeks summary judgment on Bibbs' claims for prospective relief under the mootness doctrine because defendant has irrevocably released the subrogation lien. Plaintiff argues the merits of these claims, but also infers that the present motion for summary judgment is improper, stating that:

> AmeriHealth has not responded to any of plaintiff's outstanding discovery requests, or even provided a Rule 26 Disclosure Statement. Despite this, defendant has nonetheless moved for summary judgment on what it incor-

rectly describes as the "undisputed facts."

(Pl.'s Br. in *Bibbs* at 2.)

■ Under Fed.R.Civ.P. 56, a defendant may move "at any time" for summary judgment. If necessary, a plaintiff may seek additional time for discovery required to fairly address the motion. Fed.R.Civ.P. 56(f). To do so, the plaintiff must file an affidavit that identifies "with specificity what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Bradley v. United States,* 299 F.3d 197, 206 (3d Cir.2002). The Third Circuit strictly observes this procedural requirement.[22] *Id.* at 207.

Plaintiff has not filed an affidavit here, has not asked for additional time for discovery, and has not indicated what further discovery is needed to support its argument. It would appear that plaintiff himself would be in possession of any relevant information tending to show he has suffered, or likely will suffer, some cognizable injury. Instead, plaintiff has argued the merits of this motion and has presented the Court with his own supporting evidence. Therefore, this Court will consider this motion for summary judgment.

#### 1. *Compensatory Relief Claims*

■ Defendant AmeriHealth argues that this Court should grant summary judgment[23] on plaintiff Bibbs' claims for

---

bility is also present because the Court may provide relief that will "ensure that the Plan is protected in the future" and that the plaintiffs are "compensated for the past." *See Olsen,* 180 F.Supp.2d at 565.

**21.** Defendant AmeriHealth has done precisely this with respect to plaintiff Bibbs' claim, as discussed in section II(D), *infra.*

**22.** The Third Circuit has a presumption against allowing constructive compliance with the Rule 56(f) affidavit requirement. *Bradley,* 299 F.3d at 207. Failure to comply with Rule 56(f) is fatal to a claim of insuffi-

cient discovery "in all but the most exceptional cases." *Id.* This is not the exceptional case.

**23.** Summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *Id.* In deciding whether there is a disputed issue

compensatory relief because plaintiff does not have standing since he never paid the subrogation lien that AmeriHealth asserted. (Defs.' Br. at 2; Statement of Fact ¶ 3.) Plaintiff admits that he never paid the subrogation lien, but argues that summary judgment should not be granted because AmeriHealth tried to collect the lien after the *Perreira* case made clear that the lien was unlawful. (Pl.'s Br. at 3–4.)

As the Court explained *supra* in section II(C)(3), a plaintiff must establish constitutional standing by showing (1) that he suffered an injury-in-fact, (2) that the injury was caused by the named defendant, and (3) that a favorable decision by the court would likely redress his injury. *Pryor*, 288 F.3d at 561. This Court finds that summary judgment must be granted in favor of defendant because there is no question of fact that plaintiff did not suffer the injury he alleges or that this Court cannot provide the relief he seeks to redress the injury.

First, plaintiff alleges that the suffered injury is the "millions of dollars which defendants collected" through the assertion of unlawful subrogation liens. (Complaint ¶ 5.) There is no question of fact, though, that defendants did not collect any money from plaintiff Bibbs pursuant to a subrogation lien. (Statement of Facts ¶ 3.) While he may have suffered some inconvenience when he received collection letters from AmeriHealth, he has not presented any evidence that indicates that he in any way paid AmeriHealth or incurred any other expense because of lien. This absence of evidence leads the Court to conclude that plaintiff did not suffer the injury he asserts.

Second, plaintiff seeks redress for the amounts taken pursuant to "unlawful subrogation liens." He describes his action as one brought "to recover money obtained from accident victims by their health carriers, through defendants' assertion of these unlawful so-called health care subrogation liens." (Complaint ¶ 2.) This Court cannot provide redress for amounts taken pursuant to the subrogation lien when it is clear that nothing was taken from Bibbs pursuant to the lien.

 Plaintiff also does not have standing to support his claims by asserting claims of others who have had amounts taken pursuant to subrogation liens. Third Circuit law is clear that named plaintiffs must show that they personally have been injured. *Klein v. Gen'l Nutrition Cos.*, 186 F.3d 338, 345 (3d Cir.1999) (citing *Lewis v. Casey*, 518 U.S. 343, 357, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). It is not enough to show that other members of a class that they purport to represent have suffered an injury. *Id.; accord Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir. 2000).

of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party. *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999).

The moving party always bears the initial burden of showing no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. The nonmoving party "may not rest upon the mere allegations or denials of" its pleading to show a genuine issue exists and must do more than rely only "upon bare assertions, conclusory allegations or suspicions." Fed.R.Civ.P. 56(e); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985).

Therefore, this Court will grant defendant's motion for summary judgment on plaintiff Bibbs' compensatory claims because there is no question of fact that plaintiff does not have standing to pursue such claims.

### 2. *Prospective Relief Claims*

Defendant AmeriHealth argues that this Court should grant summary judgment on plaintiff Bibbs' claims for prospective relief because they are moot. Defendant argues that there is no longer any controversy because it has revoked the subrogation lien that it placed on plaintiff Bibbs' settlement before the *Perreira* decision. (Defs.' Br. at 3.) Plaintiff argues that defendant's voluntary decision to release the subrogation lien does not render the case moot. (Pl.'s Br. at 4.)

The district court only has authority to consider actual, ongoing "cases and controversies." *Khodara Env'l, Inc. v. Beckman,* 237 F.3d 186, 192–93 (3d Cir. 2001) (quoting U.S. Const. art II, § 2, cl. 1). If "developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *County of Morris v. Nationalist Movement,* 273 F.3d 527, 533 (3d Cir.2001). However, as a general rule, voluntary cessation of challenged conduct during the course of the adjudication does not make the case moot unless "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Phillips v. Pa. Higher Educ. Assis. Agency,* 657 F.2d 554, 569 (3d Cir.1981) (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)). Then, "it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law." *Id.* The burden of demonstrating mootness "is a heavy one." *Id.*

Defendant AmeriHealth has submitted clear evidence that it has voluntarily ceased the challenged conduct. In a letter dated April 25, 2002, defendant informed plaintiff's counsel that:

> As we previously discussed,[AmeriHealth] initially asserted a subrogation lien against William Bibbs based on the belief that the injuries for which benefits were paid arose out of a worker's compensation claim. Although we still have not received definitive information regarding Mr. Bibbs' knee injury and AmeriHealth has every right to assert a subrogation lien if the benefits were recovered as part of a workers' compensation claim, my client as we have informed you in the past, has revoked its lien against Mr. Bibbs.
>
> In order to ensure that there is no misunderstanding, AmeriHealth *is not* asserting a lien, or any other interest or legal right or claim, against Mr. Bibbs.

(Biemer Cert., Ex. 1 at 1) (emphasis in original). Then, in a letter dated April 30, 2002, defendant clarified its position, stating:

> Please be advised that my letter to you dated April 25, 2002 will serve as final notice that AmeriHealth, Inc. is not pursuing a lien against William Bibbs. Because Mr. Bibbs is represented by counsel, AmeriHealth will not directly notify Mr. Bibbs or follow up with his counsel in the underlying matter.

(Biemer Cert., Ex. 1 at 2.) Defendants also present the certification of Martin Brill, Vice President–Finance of AmeriHealth HMO, Inc., who states that "[a]s a direct result of the New Jersey Supreme Court's decision in *Perreira,* AmeriHealth stopped

enforcing the reimbursement/subrogation provisions contained in its health insurance contracts ... and has no plans to do so in the future." (Brill Cert. ¶ 4.) Mr. Brill also certifies that "[g]iven the *Perreira* decision, AmeriHealth has decided not to pursue the lien, or for that matter any other interest or legal right or claim against Plaintiff." (*Id.* ¶ 5.)

While voluntary cessation of challenged conduct during the litigation may not always make a case moot, the present case is moot based on the two factors elucidated by the Supreme Court. First, there is no reasonable expectation here that the violation will recur. New Jersey law is now clear that insurance companies cannot enforce reimbursement and subrogation liens and cannot include reimbursement and subrogation provisions in their insurance policies. New Jersey Administrative Code section 11:4–42.10 provides:

(a) No policy or certificate providing group health insurance shall limit or exclude health benefits as the result of the covered person's sustaining a loss attributable to the actions of a third party.

(b) Insurers shall file with the Commissioner no later than December 31, 2002, endorsements that remove any subrogation and third party recovery provisions contained in previously filed contract, policy or certificate forms.

Bulletin No. 01–11 of the Department of Insurance states:

Health carriers are ... directed immediately to cease all subrogation and recovery efforts against persons covered by

group or individual contracts or policies issued in New Jersey ... regardless of whether these contracts include subrogation or reimbursement provisions.

Given the clarity of New Jersey law on this issue after *Perreira*, it is reasonable to assume that defendant AmeriHealth will not seek to enforce its lien against plaintiff Bibbs.[24]

Second, interim events have eradicated the effects of the alleged violation here. While a subrogation lien was placed on plaintiff Bibbs' recovery, he never paid anything to satisfy the lien. (Brill Cert. ¶ 5.) Defendants have unequivocally released the lien against his settlement proceeds. (Biemer Cert., Ex. 1.) Plaintiff Bibbs has changed health insurance carriers and is no longer covered by defendant AmeriHealth. (Brill Cert. ¶ 5.) These events during the pendency of this litigation have cured the effects of the subrogation lien asserted against plaintiff.

For these reasons, this Court will dismiss plaintiff Bibbs' claims for prospective relief as moot, and judgment will be entered in favor of defendant AmeriHealth.

### III. *CONCLUSION*

For the reasons stated herein, the motions to dismiss of defendants Horizon Blue Cross Blue Shield of New Jersey, Oxford Health Plans, Inc., AmeriHealth, Inc., Health Net of the Northeast, Inc., and United Healthcare Corporation, [Docket Items 40–1, 42–1, 48–1, 50–1, 50–2, and 54–1] will be denied. Defendant CIGNA's conditional motion to dismiss, [Docket Item 52–1], will be dismissed as moot.

---

**24.** Plaintiff has presented a letter dated January 2, 2002 in which defendant asserted its subrogation lien and stated that the amount of the lien "may increase." (Pl.'s Br., Ex. A.) Plaintiff argues that because this letter was sent after the July 5, 2001 Department of Insurance Bulletin had directed all recovery

efforts to stop, defendants are likely to continue their recovery efforts in spite of the law of the state. (Pl.'s Br. at 4–5.) This Court will still assume that defendant AmeriHealth will abide by its intention to assert no such lien in the future.

Defendant AmeriHealth, Inc.'s motion for summary judgment on plaintiff Bibbs' claims, [Docket Item 48–2], will be granted. Plaintiffs in *Levine, West, Collins, Bogurski,* and *Edmonson* shall file an amendment to their Complaints to clarify that defendants are sued in their capacities as plan administrators within fourteen days.

The accompanying Order is entered.

### ORDER

This matter having come before the Court on the consolidated defendants' motions to dismiss, [Docket Items 40–1, 42–1, 48–1, 50–1, 50–2, 52–1, 54–1], and on defendant AmeriHealth, Inc.'s motion for summary judgment on plaintiff Bibbs' claims, [Docket Item 48–2]; and this Court having reviewed the submissions on these matters by all parties; and for the reasons in the Opinion issued this date;

IT IS this 4th day of March, 2003, hereby

**ORDERED** that defendant CIGNA HealthCare of New Jersey, Inc.'s conditional motion to dismiss plaintiff Dellece L. Barbour's complaint [Docket Item 52–1] be, and hereby is, *DISMISSED AS MOOT;*

**IT IS FURTHER ORDERED** that the motions to dismiss of defendants Horizon Blue Cross Blue Shield of New Jersey, AmeriHealth, Inc., Oxford Health Plans, Inc., Health Net of the Northeast, Inc., and United Healthcare Corporation, for failure to state a claim on which relief may be granted [Docket Items 40–1, 42–1, 48–1, 50–1, 50–2, and 54–1] be, and hereby are, *DENIED;* and

**IT IS FURTHER ORDERED** that plaintiffs have fourteen (14) days from the date of this decision to file a clarifying amendment to their Complaints which clarifies that they have brought suit against defendants in their status as plan administrators; and

**IT IS FURTHER ORDERED** that Defendant AmeriHealth, Inc.'s motion for summary judgment on Plaintiff Bibbs' Complaint [Docket Item 48–2] be, and hereby is, **GRANTED;** and

**IT IS FURTHER ORDERED** that summary judgment for defendant AmeriHealth and against plaintiff Bibbs be entered in Civil No. 02–1155(JBS).